

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
AUG 17 2012
SHARON JOHNSON COLEMAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 87-2 |
| vs. | ) | Hon. Sharon Coleman |
| | ) | |
| KALLATT MOHAMMED | ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant KALLATT MOHAMMED, and his attorney, JAMES GRAHAM, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.  The information in this case charges defendant with theft of government funds, in violation of Title 18, United States Code, Sections 641 and 2.

3.  Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with theft of government funds, in violation of Title 18, United States Code, Sections 641 and 2.

**Factual Basis**

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about November 21, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, defendant KALLATT MOHAMMED and Ronald Watts stole, purloined, and knowingly converted to their own use approximately $5,200 belonging to the United States, which funds defendants were not entitled to receive, in violation of Title 18, United States Code, Sections 641 and 2.

Specifically, in approximately early September 2011, a Cooperating Witness ("CS5") who, unbeknownst to MOHAMMED was working with the FBI, told Watts that he (CS5) was transporting money for drug dealers. Watts told CS5 that he wanted to know when CS5 would be transporting money for drug dealers so that Watts could steal the money from CS5 in exchange for a payment to CS5. At the time, Watts and MOHAMMED were Chicago Police Officers who knew CS5 through their work as police officers.

On November 18, 2011, Watts was contacted by CS5. CS5 told Watts, "I got one going on," meaning that CS5 would be transporting money for drug dealers in the near future. CS5 told Watts that it would happen no later than "Monday" and Watts told CS5, "Make sure you call me."

On November 21, 2011, at approximately 12:45 p.m., CS5 called Watts. During the call, CS5 told Watts, "It's gonna go on. I got to meet them at McDonald's on twenty-sixth." Watts confirmed that CS5 was talking about the McDonald's near the intersection of 26th Street and Martin Luther King Drive in Chicago. CS5 told Watts that CS5 was going to pick up a bag from one car and walk it to another car on 29th Street. CS5 said that CS5 was supposed to be at McDonald's in one hour. Watts then told CS5 that he was also going to be there in his car.

Watts then contacted MOHAMMED and asked MOHAMMED to help with taking the money from CS5. Watts told MOHAMMED to meet with CS5 and pick up a bag. MOHAMMED agreed to do this. Thereafter, at approximately 1:56 p.m. CS5 approached MOHAMMED near 2795 South Vernon. MOHAMMED was sitting in a black four door Hyundai Azera. MOHAMMED exited the car and took the bag containing $ 5,200 from CS5. When CS5 asked MOHAMMED for some money, MOHAMMED told CS5 no, but then told CS5 to meet him on King Drive at 30th.

At approximately 2:04 p.m., CS5 called Watts and told him that MOHAMMED had not given him any money. Watts directed CS5 to meet Watts at a nearby White Castle restaurant.

A few minutes later, Watts and MOHAMMED met in the area of 5700 and 5800 South Princeton Avenue, Chicago, Illinois. Watts removed the money from the bag and disposed of the bag in a nearby alley.

3

At approximately 2:42 p.m., Watts met with CS5 in the parking lot of a Walgreens store near 22nd Street and Canal Street in Chicago. Watts gave CS5 $400 in cash, which he had taken out of the $5,200 taken by MOHAMMED from CS5 earlier that day.

Defendant acknowledges that the $5,200 taken from CS5 were funds belonging to the United States.

7. Defendant, for purposes of computing his sentence under Guideline §1B1.2, stipulates to having committed the following additional offenses:

Beginning no later than December 11, 2007, and continuing through at least May 22, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, defendant attempted to and did commit extortion, which extortion obstructed, delayed, and affected commerce, in that he attempted to obtain and obtained property, namely United States currency, from narcotics traffickers in the Ida B. Wells Housing Complex, with those persons' consent induced under color of official right, and by the wrongful use of fear of actual and threatened economic harm, in violation of Title 18 United States Code, Section 1951.

More specifically, beginning no later than 2007 and continuing through at least 2008, Watts, with the assistance of MOHAMMED, extorted protection payments from narcotics traffickers who were selling heroin and cocaine base in the form of crack cocaine ("crack cocaine") at the Wells Housing Complex. Specifically, Watts and MOHAMMED, while employed as Chicago police officers, demanded money from heroin and crack cocaine dealers at the Wells Housing Complex in exchange for not arresting narcotics traffickers, as

was their duty. Certain of the protection payments were made by individuals who were, unbeknownst to Watts and MOHAMMED, cooperating with the government. Watts and MOHAMMED obtained $4,700 in government funds from payments that were made to Watts or MOHAMMED by cooperating individuals.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

    b.    **Offense Level Calculations.**

<u>Offense of Conviction</u>

i.    The base offense level for the offense of conviction is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.    The offense level is increased 2 levels because the offense of conviction involved $5,200, which is more than $5,000 and less than $10,000, pursuant to Guideline § 2B1.1(b)(1).

iii.    Thus, the total offense level for the offense of conviction is 8.

<u>Stipulated Offenses</u>

iv.    The base offense level for the stipulated offenses is 14, pursuant to Guideline §2C1.1(a), because defendant was a public official.

v.    Pursuant to Guideline §2C1.1(b)(1), the offense level is increased by 2 levels because the offense involved more than one attempted extortion.

vi.    Pursuant to Guideline §2C1.1(b)(3), the offense level is increased by 4 levels because, as a sworn police officer, defendant held a sensitive position.

vii.    Thus, the total offense level for the stipulated offenses is 20.

### Grouping

viii. The offense of conviction and stipulated offenses are not grouped. Pursuant to Guideline § 3D1.4, the combined offense level is 20 because this is the offense level for the stipulated offenses, which is the highest offense level. The offense level is not increased because the offense level for the offense of conviction if 9 or more levels less serious than the group with the highest offense level.

### Role in the Offense

ix. The defendant reserves the right to argue for a reduction in offense level pursuant to Guideline § 3B1.2 based on a mitigating role in the offense. The government opposes such a reduction.

### Acceptance of Responsibility

x. If by the time of sentencing the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of USSG 3E1.1(a), defendant should receive a two-level reduction in the offense level. At the present time, given that the defendant is disputing the application of certain guidelines, the government reserves its position on this adjustment until the time of sentencing.

xi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources

efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater and determines that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, if a two-level reduction is given for acceptance of responsibility and the court grants an additional one-level reduction for timely notice of a plea of guilty, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose. If a two-level reduction is not given for acceptance of responsibility, the anticipated offense level is 20 and the anticipated guidelines range is 33 to 41 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant reserves the right to argue that a lower guidelines range is applicable, based on the applicability of Guideline § 3B1.2.

8

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $9,900 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 87.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

17. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. Right to be charged by indictment. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

   b. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

      i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

d. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

13

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

21.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

22.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

23.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

26. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/17/12

_Gary S. Shapiro_
GARY S. SHAPIRO
Acting United States Attorney
by LJBarsella

_Margaret Schneider_
MARGARET J. SCHNEIDER
Assistant U.S. Attorney

_Kallatt M_
KALLATT MOHAMMED
Defendant

_James Graham_
JAMES GRAHAM
Attorney for Defendant

16