UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   12 CR 87 |
| v. | ) | |
| | ) | Hon.  Sharon Johnson Coleman |
| RONALD WATTS | ) | |

GOVERNMENT'S MOTION TO PRECLUDE CROSS-EXAMINATION OF
AGENT REGARDING PRIOR DISCIPLINARY PROCEEDINGS

The UNITED STATES OF AMERICA, by and through its attorney, GARY S. SHAPIRO, United States Attorney for the Northern District of Illinois, hereby respectfully moves this Court for entry of an order precluding the defense from cross-examining one of the government's surveillance agent witnesses regarding disciplinary action that occurred in 2005 that is not probative of truthfulness.

I.     Background

     A.     Factual Background

On November 21, 2011, Sergeant Ronald Watts and Officer Kallett Mohammed were assigned to the Chicago Police Department's 2nd District tactical team.  That day, they planned and then conducted an operation to seize drug proceeds from a courier working for drug dealers who operated in the 2nd District.  Watts and Mohammed knew when and where the courier would pick up the drug proceeds and the path the courier would take to deliver the drug proceeds.  Shortly before 2:00 p.m., Mohammed approached the courier, who was carrying a bag near the location where the courier was to deliver the proceeds.  Mohammed took the bag, which contained $5,200 in U.S. currency.  Mohammed did not arrest the courier, however.  Instead, Mohammed met

up with Watts, and they kept the $5,200 for themselves, which was their plan from the get-go. Unbeknownst to Watts and Mohammed, the "drug courier" was a Confidential Source ("CS") working with the FBI and the money he was carrying belonged to the United States. Based on this conduct, Watts and Mohammed were charged in an information with theft of government funds, in violation of 18 U.S.C. § 641.

    B.    Government's Surveillance Evidence

The government's evidence at trial will include the testimony of several agents who were conducting surveillance that day, including one agent (referred to herein as "Surveillance Agent A"), who was the subject of disciplinary action in 2005. Among other surveillance evidence, Surveillance Agent A will testify that at approximately 1:30, he and a partner saw the CS arrive at a McDonald's parking lot on South Martin Luther King Drive and subsequently receive a bag from a black Chrysler Pacifica. Around that time, Surveillance Agent A also saw a black Hyundai Azera, which other evidence will show is registered to Mohammed, depart the McDonald's parking lot. Surveillance Agent A later surveilled the Azera traveling southbound on the Dan Ryan Expressway and, at about 2:08 p.m., he saw Mohammed's Azera arrive in the area of 5720 South Princeton Avenue, where it parked in the vicinity of a Cadillac registered to Watts. Surveillance Agent A will further testify that he saw Mohammed's Azera drive north on South Princeton Avenue a short time later.

    C.    **Surveillance Agent A's Prior Disciplinary Proceeding**

In October 2005, Surveillance Agent A was suspended from duty without pay for 177 days, demoted one grade, and placed on disciplinary probation for one year. This

disciplinary action was imposed because he provided information to the media at a press conference after being advised not to do so and without FBI authorization. The FBI determined that the information that he provided he knew or should have known would negatively impact FBI investigations.

The government disclosed this information to defense counsel in a letter dated July 1, 2013. In that letter, the government advised counsel that it did not believe that this constituted appropriate impeachment material. At the pretrial conference, defense counsel advised the Court that it would like to cross-examine Surveillance Agent A with respect to this information and noted that there is Illinois state court case law in support of allowing such cross-examination. The Court asked defense counsel to submit to chambers any such case law, which he did on July 12, 2013.

II.  Argument

Cross-examination of Surveillance Agent A regarding this prior disciplinary proceeding should be precluded because it is not probative of his truthfulness. Where a witness has not been convicted of a crime, extrinsic evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness," is inadmissible. Fed. R. Evid. 608(b). Thus, extrinsic evidence of "bad acts" such as being disciplined by the FBI for holding an unauthorized press conference is inadmissible under Rule 608(b). Under Rule 608(b), the Court may permit cross-examination regarding specific instances of such conduct if probative of a witness's character for truthfulness. Id. Surveillance Agent A's conduct, however, is not probative of his character for truthfulness; therefore, cross-examination

3

regarding such conduct should be precluded as improper impeachment. See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007) (affirming district court's ruling that cross-examination of police officers about former reprimands for neglect of duty should be precluded because "this evidence was not even relevant under Rules 401 and 402 because it did not bear on their character for truthfulness").

The Illinois state court cases provided by defense counsel to the Court do not support his position that cross-examination on this topic should be permitted. In Illinois v. Phillips, 420 N.E.2nd 837 (Ill. App. Ct. 1981), the court held that the trial court erred by precluding cross-examination of an officer regarding prior suspensions. However, in Illinois v. Collins, 985 N.E.2d 613 (Ill. App. Ct. 2013), the court found that Phillips involved a unique and narrowly-tailored scenario in which cross-examination should have been allowed because the evidence in the officer's personnel file related to the defendant's theory of the case. 985 N.E. 2d at 618. Specifically, in Phillips, the defendant's theory of the case was that he shot a police officer because the officer was improperly using his weapon in a threatening matter; the cross-examination that was precluded involved that fact that the officer had previously had been suspended for improperly displaying his weapon. Id. In Collins, however, the court precluded cross-examination of an officer regarding the fact that he received a one-day suspension for providing inaccurate information to a deputy chief conducting an investigation. Id. The court found that this cross-examination was improper because it was unrelated to the officer's "ability to conduct undercover drug investigations and did not raise an inference that he had anything to gain or lose by his testimony in the present case."

Id.  In this case, as in Collins, the proposed cross-examination has nothing to do with Surveillance Agent A's ability to conduct surveillance, nor does it raise any inference that he has anything to gain or lose by his testimony, given that the disciplinary proceedings concluded almost eight years ago.  Thus, even if these Illinois cases were controlling, the cross-examination that Watts' counsel proposes would be precluded under Collins.  Moreover, as set forth above, under Rule 608(b) and Seventh Circuit case law, the cross-examination should be precluded because it is not probative of Surveillance Agent A's character for truthfulness.  Thus, any such cross-examination should be precluded.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion.

Dated: July 18, 2013

                                                Respectfully submitted.

                                                GARY S. SHAPIRO
                                                United States Attorney

                            By:    /s/ Margaret J. Schneider
                                     Margaret J. Schneider
                                     Megan Cunniff Church
                                     Assistant United States Attorneys
                                     219 South Dearborn Street
                                     Fifth Floor
                                     Chicago, Illinois 60604
                                     (312) 886-2035