IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 12 CR 87-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chicago, Illinois |
| | ) | October 9, 2013 |
| RONALD WATTS, | ) | 1:35 p.m. |
| | ) | |
| Defendant. | ) | Sentencing |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

APPEARANCES:

For the Government:          HON. GARY S. SHAPIRO
                             United States Attorney, by
                             MS. MARGARET J. SCHNEIDER
                             MS. MEGAN C. CHURCH,
                             Assistant United States Attorneys
                             219 South Dearborn Street
                             Chicago, Illinois  60604


For the Defendant:          LAW OFFICES OF THOMAS GLASGOW
                            1834 Walden Office Square
                            Suite 500
                            Schaumburg, Illinois  60173
                            BY:  MR. THOMAS T. GLASGOW
                                 MR. WILLIAM B. BEATTIE

U.S. PROBATION:             MR. ZAKARY FREEZE




TRACEY DANA McCULLOUGH, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1426
Chicago, Illinois  60604
(312) 435-5570

THE CLERK:  12 CR 87, USA versus Ronald Watts for sentencing.

MS. SCHNEIDER:  Good afternoon, Your Honor.  Maggie Schneider and Megan Church for the United States.

MR. GLASGOW:  Good afternoon, Your Honor.  Thomas Glasgow, G-L-A-S-G-O-W, as well as Mr. William Beattie for Mr. Watts.

THE COURT:  All right.  Good afternoon everyone.  Good afternoon, Mr. Watts.

DEFENDANT WATTS:  Good afternoon, Your Honor.

MR. FREEZE:  Judge, Zakary Freeze with the U.S. Probation office.

THE COURT:  All right.  Mr. Freeze.  And we're here for sentencing.

MS. CHURCH:  Yes, Your Honor.

THE COURT:  And is everyone ready to proceed?

MR. GLASGOW:  Yes, Your Honor.

MS. SCHNEIDER:  Yes, Your Honor.

THE COURT:  Mr. Watts.

DEFENDANT WATTS:  Yes, ma'am.

THE COURT:  The Court wants to point out that I have reviewed the presentence investigation report here that has been presented to the Court, the different written presentations by your lawyers on your behalf and by the government, and just the overall history of this case on the

docket. Sentencing is the most difficult and probably important task that a judge has to perform. I do not take it lightly.

And it is important that this Court not only be aware of the statutory provisions when it comes to the offense that you have pled guilty to. The Court also looks at the guideline provisions, which I'm sure your lawyer has told you -- your lawyers have told you that is advisory, but does give this Court some context on which to base its judgment. The Court looks at again all of the presentations in writing that have been presented. I'll hear oral arguments, and I will also give you the opportunity to address the Court.

After having and considering all of that information, the Court then also looks at the sentencing factors under 3553 (a) of the statutes to fashion a sentence in your case that is sufficient but not greater than necessary. So, in other words, sir, I look at everything. All right. And so it is not -- there's not a cut and dried formula or cut and dried sentence. Every case is different. The Court also notes that the Court has in front of it, of the Court all of the letters that you have presented on your behalf. And the Court notes there are persons in court here to support you.

All right. But, first of all, we are going to look at the presentence investigation report. And the presentence investigation report that has been tendered to the Court after

your guilty plea is a large document which you were able to give input to Probation.  Probation got information by you, information probably from some of your relatives, close friends to compile this picture of what your criminal history is, what your personal history is for the Court to review.  And it results in after there is a compilation of all that information the Court is recommended a particular offense level and criminal history category.

And in this case it is what, Mr. Freeze?

MR. FREEZE:  Judge, the total offense level or the criminal history category?

THE COURT:  The category, the category.  The offense level.

MR. FREEZE:  The total offense level that I have calculated --

THE COURT:  I just wanted to make sure I had the right document.

MR. FREEZE:  -- is 12.

THE COURT:  Okay.

MR. FREEZE:  And with a criminal history category of 1, Judge.

THE COURT:  All right.  That's what I had.  There was a little bit of confusion on the docket where one of the other defendants was somehow superimposed.

MR. FREEZE:  I apologize for that, Judge.

THE COURT:  That's all right.  The Court caught it, and I just wanted to make sure that we're on the record having the right calculations.  So that's what the Court had, an offense level presented on the PSI of 12, which would -- and a criminal history category of 1, which would be an advisory guideline provision of 10 months to 16 months in Zone C.  With a recommendation of the guidelines of 1 to 3 years of mandatory supervised release, a fine of 3,000 to $30,000, and a special assessment of $100.  That's the advisory guidelines.

Is there any argument from the defense, who I'm certain have gone over this document with your client, as to whether or not this Court should adopt the presentence investigation?

MR. GLASGOW:  As the Court knows, this was tendered to us.  We did get a chance to go over it with Mr. Watts.  We went over it in great length.  There are no additions, corrections, or deletions.  And he concurs with the sentencing guidelines which have been put forth by Probation.

THE COURT:  All right.  Thank you.  As to the government, do you have any adjustments that you believe need to be made in the presentence investigation report?

MS. SCHNEIDER:  We do, Your Honor.  We when preparing our sentencing memorandum realized that we failed to advance an enhancement for -- under Section 3 (b) 1.1 (c) for the defendant being a leader or organizer in the offense.  We

believe that that enhancement should apply here.  He planned and organized the offense as the point of contact with the confidential source.  He recruited Mr. Mohammed to participate. He claimed a larger share of the proceeds of the crime.  And as Mohammed's sergeant and organizer -- and as the organizer of the activity, he exercised control.  And I think those are all factors that the law says should be considered in applying this enhancement.  And given that they are present here, we do believe that two levels should be applied.

THE COURT:  And you believe the calculation should be a 14 offense level then, is that correct?

MS. SCHNEIDER:  Yes.

THE COURT:  Would you like to respond, Counsel.

MR. GLASGOW:  Yes, Your Honor.  The basis for the enhancement that the government has given is based on supposition, and there's been no evidence that's been tendered before the Court to end up adding the enhancement level.  The supposition that he ended up being the leader is a bit of a stretch, Judge, considering the fact that Mr. Mohammed and Mr. Watts were alleged throughout the entire course of this case to have worked in concert.

Additionally, as Your Honor recalls, from -- as this Court had listened to during the course of the plea of Mr. Mohammed, he claimed that he accepted no cash and had no remuneration whatsoever as a result of any of the schemes,

artifices, or of the ongoing issue that Mr. Watts and himself apparently participated in.  That's highly unbelievable, Judge.

And in addition, Mr. Watts and Mr. Mohammed, there is no showing of who was the leader as there was no audio from Mr. Mohammed nor Mr. Watts as to what was going on during the course of the conversations back and forth.  The only thing that the government was able to produce was the fact that they were contacting and talking to each other vis-a-vis the fact that the PIN register indicated that they were calling one another during the course of the commission of the act that has been charged, as well as the aggravating factors set forth in the sentencing memorandum and the government's sentencing memorandum.

There has been nothing to substantiate that position. And as such, Judge, I would respectfully object to the Court.

MS. SCHNEIDER:  Judge, I think that the facts are there given the various documents that we attached to our government's version that lay out the facts.  The facts admitted to by Mr. Mohammed in his plea agreement, the facts admitted to by Mr. Watts when he pled guilty all establish that Mr. Watts was running the show when it came to the charged offense.  Like I said, he was the one who organized the whole thing, recruited Mr. Mohammed and brought him into it.

I would also note that I believe Mr. Mohammed got a reduction for being a minor participant in the offense, which

would I think further suggest that Mr. Watts was, in fact, the one who was more culpable and responsible for organizing and leading this offense.

THE COURT: Because Mr. Mohammed got a lesser amount and was agreed to in his deal, that assumes that --

MS. SCHNEIDER: No, I'm sorry, Judge. He was determined to be a minor participant in the offense under the guidelines. And I think the other side of that coin in part is that Mr. Watts was more culpable. And I think the facts show that he was, in fact, the one who did organize this offense and pushed it forward much more so than Mr. Mohammed.

THE COURT: The Court is looking at the factors that would determine whether or not this Court should allow a two-point enhancement for him being -- Mr. Watts being a leader here. There is several things to take a look at here that go on either side of the ledger. The facts that were presented both in Mr. Mohammed's case, both his plea and the review of the offense in his PSI and the plea that was presented by Mr. Watts would tend to indicate that Mr. Watts was the leader.

But, of course, as counsel has stated, we have one side. Clearly Mr. Mohammed pled quickly and wanted to take advantage of that obviously for his own benefit. The Court also notes, though, that the defendant Mr. Watts was the senior officer of the two. And it appeared from some of the attachments of the government he was referred to as the big man

or the man in some of the attachments that were put forth by the government. Obviously you don't have to be at the same level to have the same participation. Just because you are on different ranks doesn't mean that you have one that may have a lower rank that may not still be running things.

This Court believes it's a close call on whether or not in some ways it appears that the defendant was, but the Court also believes we have a defendant Mr. Mohammed whose role at most may have been slightly less. They were in it together throughout. Doing it together. And the Court is going to deny the motion for a two-level enhancement for being a leader or organizer. And so the Court will adopt the presentence investigation report that has been presented by Probation.

All right. As to motions for departure, either side. First defendant.

MR. GLASGOW: Judge, we accept the sentencing range, and we're not making a move for a downward departure in this matter.

THE COURT: All right. Government.

MS. SCHNEIDER: Yes, Judge, we are seeking a sentence that is above the guidelines range. Do you want me to proceed with my argument?

THE COURT: You know what, why don't you combine it with your total sentencing recommendation.

MS. SCHNEIDER: Sure. Proceed?

THE COURT: Yes.

MS. SCHNEIDER: Okay. We do believe that a sentence above the guidelines, and our recommendation is 36 months, would be sufficient but not greater than necessary in this case. It would reflect the serious nature of the offense, the history and characteristics of Mr. Watts, and the goals and purposes of sentencing as set forth in Section 3553 (a).

In terms of the nature and circumstances of the offense, the charged conduct and the relevant conduct were serious offenses that were a betrayal of his duty as a police officer. When he was approached by someone that he believed to be a courier for drug dealers, he jumped right on the idea of stealing what he believed to be drug proceeds from the courier and then kicking back a portion to the courier. He did this twice with apparently no second thoughts from what we see on the recordings, and which leads you to wonder how many times he might have done something similar when the government was not involved.

So in addition to that, the Court can and should also consider the other criminal conduct that the defendant has engaged in in the course of his career as a police officer. As set forth in the submissions to Your Honor, from at least 2007 into 2008 he while working in the Ida B. Wells projects with his co-defendant Mohammed, projects that were plagued with crime, drug dealing, gang activity, rather than serving and

protecting the residents of those communities, he and Mohammed worked together to extort protection payments and protect the drug dealers that he should have instead been pursuing.

I also would note that he did other things such as putting a false case on the confidential source that was involved in our investigation. Had him arrested on drug charges. And the source, who was a homeless unemployed alcoholic, felt he had no chance of successfully fighting that case so he pled guilty to a crime he didn't commit. So all of these factors and criminal conduct in which the defendant has engaged is very serious and warrants a serious sentence.

In terms of his history and characteristics, as you have seen from the defense's submissions, he certainly has some good characteristics. He appears to be a loving father, a good friend. He served in the military and successfully performed some of his duties as a police officer. But it almost makes it worse that despite all these good qualities, he chose to betray his oath as a police officer and instead engage in years of crime. These good qualities should have prevented him from engaging in the crimes that bring him here, but they didn't. He let his greed win out and chose to extort drug dealers and steal from who he believed to be drug couriers.

A significant sentence is also needed here to reflect the seriousness of the offense and promote respect for the law. The crime was very serious and undermined the criminal justice

system and crimes because of his position as a police officer. Crimes like these give the community reasons to doubt law enforcement and believe that law enforcement can't be trusted. And not just in this case, but in other cases citizens doubt law enforcement and doubt the legitimacy of what are otherwise legitimate criminal prosecutions when they see things like this happening. So a significant sentence is warranted here to address these issues, to promote respect for the law, and to show how serious these offenses are.

And finally, I think the government believes a significant sentence is needed to deter both this defendant and others from criminal activity. In terms of the larger general deterrence, the sentence here needs to send a message to the law enforcement community that bad cops will be prosecuted and punished when they use their position to commit crimes. Deterrence is particularly important because of the difficulties that we have in investigating and prosecuting these types of cases.

People like the CS in our case or residents in the Ida B. Wells Housing Project don't believe that they will be believed over the words of a police officer, so they don't come forward. Making it very difficult to detect and prosecute these crimes. Also, I think specific deterrence is an issue here with respect to Mr. Watts. He will probably never again be in a law enforcement position, but he faces a future as a

convicted felon. His conduct suggests that he may attempt to engage in similar criminal activity when he's living under more dire circumstances, difficulties in being a convicted felon and perhaps have difficulty in obtaining employment. And a sentence here should keep him out of the community long enough to deter him from future criminal activity.

THE COURT: A question on that. Do you think his situation changes once he gets out?

MS. SCHNEIDER: Well, because --

THE COURT: Because he's been in longer, it's going to be better?

MS. SCHNEIDER: No, but perhaps a longer sentence will be further deterrence to him to make him think harder about engaging in criminal conduct in the future.

THE COURT: Even though he'll be in the same dire circumstances when he gets out?

MS. SCHNEIDER: True, but a stiffer sentence makes people think twice about what they might do in the future. So for all of these reasons we believe that a sentence of 36 months would be a sentence that is sufficient but not greater than necessary to hold the defendant accountable for his crimes, for his abuse of authority as a sworn Chicago police officer, and for the damage that he caused to the reputation of all sworn law enforcement officers and for the damage that he caused to the communities that he was supposed to serve.

THE COURT:  And what are you -- do you have any recommendations -- is there a restitution or fine amount that you are recommending or no?

MS. SCHNEIDER:  There is.  We are asking that Your Honor impose as a condition of supervised release that he be required to repay $15,280 that he received during the offense of conviction on the relevant conduct.

THE COURT:  All right.  Thank you very much. Counsel.

MR. GLASGOW:  Thank you very much.  I appreciate it. May it please the Court, Counsel.  The government's version of events are what Mr. Watts has pled guilty to.  And he has come forward and he has admitted to this Court his role and responsibility in those actions.  He's taken personal responsibility to come before this Court and ended up indicating that he did this and is admitting to the Court and to the public that he committed this crime.

That being said, this Court knows that he acted in concert with Mr. Mohammed.  And he acted in concert with Mr. Mohammed during the course of the alleged acts that the government has brought forth.  The fact that Mr. Watts was charged with one count does not discount the statement that Mr. Mohammed made during the course of his discussions with law enforcement, which was included in the attachments that this Court read that Mr. Mohammed was the one who asserted that he

was the one who always accepted extortion payments. Mr. Watts was never there.

Additionally, Judge, he claims on page 3 that he never got any payments from the extortions of any dealers or any payments other than a $200 loan from the charged conduct, which again, is an absurd assertion for this Court -- that the government would put forth to the Court.

As for the false case of Mr. Hopkins, this Court knows that the defendant -- or excuse me, Mr. Hopkins has a lengthy criminal record. I believe that we litigated parts of his criminal background, and the Court is well aware of the felonies that Mr. Hopkins has, as well as the crimes of moral turpitude that he has in his background. He admitted to the crimes that he was arrested for. The government's supposition that it was Mr. Watts who put a case on him is nothing more than that. There was nothing that I could find for this Court that would indicate through a transcript or through anything else during the course of his plea that he made any assertion or allegation towards Mr. Watts or any other law enforcement official that they had done anything wrong.

This Court has to take into consideration the fact that not only is Mr. Hopkins a convicted felon and served penitentiary time, but he does have severe alcohol and drug problems. Additionally, the Court is well aware that has a propensity to lie due to his prior arrests and convictions that

have been brought forward and made part of the litigation in this case. Mr. Hopkins is a questionable individual at best, and he has every reason to lie about his action towards Mr. Watts as he was getting payment from law enforcement for his participation in this matter.

Mr. Watts has through the presentation and the attachments that we have presented to this Court, has engaged in a long life of public service. And but for the charges that have been levied against him and the actions which the government ends up alleging, he has had a very storied background as a Chicago police officer. Obtaining numerous awards, gaining the benefit of the community, and helping the community around him. I know this Court has read the letters that have been attached to our sentencing memorandum showing what kind of father and what kind of person he is. It shows the character that Mr. Watts does have, and it shows a rehabilitatable person that is worth saving and worth going the extra mile for.

Mr. Watts has numerous amounts of mitigation in this matter, which we have presented. And I always find it interesting that the government attempts to characterize that in some way as aggravation as if he had a lengthy criminal background that would be a much better issue for this Court to take into aggravation. The fact that he has a good background shows that he is somebody that is not deserving of a long

criminal sentence.

He is agreeing to restitution, Judge.  The restitution in this matter should be set for the counts charged, as Mr. Mohammed was only sentenced to pay restitution I believe of $9900, which does not include any of the other agreed -- excuse me, aggravating circumstances that I believe the government is setting forth in this matter, which the government has alleged and has acknowledged that Mr. Mohammed and Mr. Watts worked in concert with each other.  Yet the additional amount that they are attempting to have as restitution, the $10,000 and change, is something that Mr. Mohammed was not subjected to in his restitution.

Mr. Mohammed was made jointly and severally liable I believe for $5200, which Mr. Watts accepts responsibility for and will pay restitution for and agrees to the $5200 of restitution.  But as for the further amount, Judge, I don't think that that's appropriate for this Court to order based upon the totality of the circumstances and based upon the totality of both pleas.

He has no criminal background, Your Honor.  He has a level one.  He's obeyed every command of this Court while on bond.  He has appeared each and every time that Your Honor has asked him to.  He has created no problems and no issue for Pretrial.  During the course of his plea and discussions with him, Mr. Watts realized that by pleading guilty and accepting

responsibility to this he has lost both his career and his pension. He realizes that this amount of stigma that has been brought upon him is something that will never be washed away. And this is something that he will carry with him the remainder of his life.

By pleading guilty he has chosen to give up his chosen profession in this world. And he is attempting to make amends for the wrongs that he did by pleading guilty to this Court. A lengthy sentence, Judge, would not serve the interest of justice because of the fact that he is now unemployable in the field which he has been part of for years and years and years. Sending him to the penitentiary, sending him to prison will end up giving and sending the message that deterrence has been met by this Court.

It does not further the criminal justice system nor the ends of justice for a lengthy prison term for a man, No. 1, of his age. And No. 2, based on the mitigating factors that have been brought to the Court's attention. Your Honor, the sheer effect of this plea that he voluntarily chose to enter into and accept responsibility should be reflected in the sentence in this matter. We would respectfully ask this Court for a minimum sentence in this matter and restitution of $5200, plus the additional one year mandatory supervised release.

THE COURT: Thank you, Counsel. Mr. Watts -- and counsel can clear out. Mr. Watts, if you wish to address this

Court, this is your -- you can stand in front of the mike -- this is your opportunity to do so. Everyone who stands before this Court prior to sentencing has that opportunity if they wish to take it. I will listen to your comments that you wish to make to the Court or to the Court as a whole or to me in particular about your sentencing. And this is your time, sir. Proceed.

DEFENDANT WATTS: I wish not to make a statement. Thank you.

THE COURT: All right. Thank you very much.

MS. SCHNEIDER: Your Honor, I can clarify the financial issue if you would like.

THE COURT: Oh, if you wish to address that, that would be good.

MS. SCHNEIDER: Sure. Mr. Mohammed agreed to repay $9,900, which was the $5200 from the offense of conviction. Plus as you may recall, he actually stipulated to the Ida B. Wells conduct, and there was certain controlled payments we had that we could add up that he paid. So that was where that number came from. Mr. Mohammed was not involved, or at the very least very minimally involved in the first theft that is the relevant conduct here, the PSI found was relevant conduct. And that one involved 11,000 -- that theft was $11,650.

So our figure of 15 -- it should be -- I'm sorry. My math is wrong. 16,000.

THE COURT: You said he was minimally or not involved?

MS. SCHNEIDER: We have no evidence that he was involved. There was some supposition that Mr. Mohammed was involved, but he didn't admit to that, any involvement in that offense.

THE COURT: In the offense that involved how much?

MS. SCHNEIDER: $11,650.

THE COURT: All right. And so you agree that $5200 is the amount that he should be --

MS. SCHNEIDER: Our position is given that the earlier theft was found to be relevant conduct in the PSI, that that should also be imposed -- repayment on that should be imposed.

THE COURT: All right. You're going to have to give this to me again.

MS. SCHNEIDER: All right. There's -- so there's the offense of conviction, which everyone agrees involved $5200.

THE COURT: Correct.

MS. SCHNEIDER: That Mr. Mohammed and Mr. Watts did together. Then there was a March of 2010 transaction that we don't have evidence of Mr. Mohammed's involvement, but significant evidence of Mr. Watts' involvement.

THE COURT: Okay.

MS. SCHNEIDER: And that one involved $11,650. So it

would appear that my math was bad.  It should be 11,650 plus 5200.  At least that's our position.

THE COURT:  Counsel.

MR. GLASGOW:  Your Honor, it seems that the government is relying very heavily on the statements of Mr. Mohammed, who has pled guilty in this matter, and is selectively picking and choosing what they wish to end up delegating to Mr. Watts or not delegating to Mr. Watts.  They have made the allegation that they have been -- that they have acted in concert and that somehow Mr. Watts was the primary responsibility of the criminal activity in this matter, but yet have taken on Mr. Mohammed's allegations that other activities were to be attributed to him.  But yet the entire activity from beginning to end was supposedly between the two of them and at Mr. Watts' direction.

I mean, it seems that they are asking this Court to have it both ways.  And most respectfully, Mr. Mohammed did plead guilty.  He got to pick and choose what he was going to tell the government.  And the fact that there is not evidence that Mr. Mohammed was involved based upon what Mr. Mohammed decided to tell the government does not really bolster the argument that he wasn't.  That being said, he was not punished for that in any way.  And Mr. Watts is taking the position because this is an uncharged crime and there's not significant evidence that, you know, Mr. Watts and/or Mr. Mohammed were

involved in this, that he shouldn't have to pay that restitution, Judge.

THE COURT: All right. I've heard the arguments on that. Thank you.

As I stated earlier, Mr. Watts, this Court relies on the arguments presented by the government's counsel and your counsel on the PSI, on the history of this case, looking at the documents that have been presented and all of the attachments. In this particular case there is some question that sometimes as to whether or not some of the evidence relied on in your case or at least the arguments relied on as far as your sentencing is concerned are based on information from a co-defendant who may have had reasons of his own to make certain statements. And the Court keeps that in mind also.

But, first of all, the Court looks at your background, your history here. And as counsel said, you have no criminal background. You're a level 1 as far as criminal history is concerned. You have a history of service to our country. You have served our community as a police officer, rising to the ranks of sergeant. You have a strong educational background. Although you came from a large family that seems to be fairly close, it also appears that even though you have a family that is somewhat fractured, you still maintain close ties with your children, various children. Several who have done well for themselves and said they did well based on your

support.

So if the Court were to look at the picture of you through that lens only, this Court would see a picture of a strong male figure not only in his family, but in his ethnic community, professional community, community at large. Somebody to be respected and to be an example. And then the Court has another lens that the Court has to look through. And your counsel is arguing that when I look through that lens, I look through it understanding that you're coming from a point where all things were good and you get credit for that.

The problem is that the mistake you made here, even though there is one count that you pled to and there's some questions of whether Mr. Mohammed is putting more on you to get himself out of some of his trouble, this was ongoing. All right. And I don't know who all did what, when, but you were part of more than just one incident. And you were a sergeant, and you were operating in a community that should hold you up as the example I just stated. And you took advantage of that community.

The government talks about it being a community, the Ida B. Wells Homes, formally Ida B. Wells Homes, talks about it being a place rampant with crime and drugs and problems. The place was rampant with poverty, underprivileged, addictions, illnesses. The crime stuff comes after. And it's because of that. And you were there to protect those people, and you

didn't. And Mr. Hopkins, you know, based on a lot of what I read may be one of the baddest things walking around, but that's why you chose him. Who would believe him? And who would be vulnerable or be amenable to participating.

And what really upsets this Court is that, you know, it's bad enough that drugs are brought from the outside into the community that's already down and out, but for you to be part of the face of that or even be condoning it or not stopping it is unconscionable to this Court. So your own children have advantages. You had all those little kids in that area, this is what they see. So they see drugs. They see crime. They see cops shaking down people. They see drug dealers being able -- allowed to continue to do what they're supposed to -- want to do.

And then what are they taught? They're taught not to respect men such as yourself or anybody with a badge on, which is a big problem we have here. And it not only goes to the badge, it goes to the whole judicial system, the whole criminal justice system. That we have to constantly work to try to make people understand that we try to be fair. Sometimes we aren't, but we try to be fair. But when they see examples live in front of them, what are they supposed to think?

Your actions, sir, were a betrayal to your oath as a police officer. You betrayed your community, both your law enforcement community, the African-American community, that

south side community. Your actions were a betrayal. It is a serious offense. Drugs are always serious to this Court. The prevalence of drugs and the business of illegal drugs in -- anywhere, but particularly in neighborhoods that have no wherewithal to fight for themselves. It is important that this Court set a sentence that promotes respect for the law, and I'm preaching to the choir, someone who was taught and had a job of respecting the law, but he broke the law.

Deterrence as to your criminal conduct. You know, the Court does not know exactly why you went down this road. Based on my review of your background and some of your outside interests, I have an idea as to why you wanted to continue to have money as easily as possible. Maybe it was to support a gambling habit. Maybe it was -- I don't know. I mean, it says here you like to gamble. And maybe again we got facts crossed here. I don't know. But there had to be some reason.

But I don't know if whatever we choose here or what this Court determines here would be an adequate deterrence, but this Court needs to make sure that this doesn't continue. Not only for you, but it doesn't continue for anyone else. Let's send a message that the Court doesn't tolerate and the community won't tolerate this activity.

The Court notes that Mr. Mohammed got an 18-month sentence. And one of the factors the Court looks at is making sure that there are no unwarranted sentencing disparities among

the defendants in this case.  I guess you can tell, sir, that as much as I am impressed by your background, by the achievements of your children, the support of the family that wrote letters on your behalf, suffice it to say, that this Court is all the more disappointed based on your position in law enforcement, based on your position as a leader in -- what should have been a leader in the community, and that weighs heavily as a factor that this Court is considering.

This Court is going to, therefore, sentence you, Mr. Watts, to an amount above the advisory guidelines.  And this Court is going to sentence you to 22 months in the Bureau of Prisons and 1 year mandatory supervised release after the completion of that sentence.  The Court is not going to recommend a fine.  However, the Court will recommend that restitution be in the amount of $5,200.  A special assessment is going to be $100.

After you are released from your 22-month sentence, sir, you will report within a 72-hour period to Probation, and you will comply with all the conditions that are set forth, the standard conditions of probation.  In addition to the standard conditions, you will be providing them if they so request drug samples and enter into any program if they believe one is needed for illegal drugs.  You will not be possessing any weapon or destructive device, committing any crimes, state, federal, or local.

You will report for any counseling if they believe that counseling is needed. You will also undergo any counseling, financial counseling if they believe that is needed. As to the restitution, what are the requirements again, Mr. Freeze, as to if he's not working?

MR. FREEZE: I think it's a repayment of buy money is how that needs to be ordered.

THE COURT: All right.

MR. FREEZE: And counsel can correct me.

MS. SCHNEIDER: I think that's correct, Your Honor.

THE COURT: Repayment of buy money of $5200.

MR. FREEZE: The probation office wants to ask the Court and counsel if any of that portion is joint and several -- severally liable with the co-defendant.

MR. GLASGOW: Yes, Judge. I believe Mr. Mohammed was --

THE COURT: It should be --

MR. GLASGOW: -- sentenced jointly and severally.

THE COURT: -- jointly and severally.

MS. SCHNEIDER: I agree, Judge.

MR. FREEZE: In its entirety then, is that correct?

THE COURT: For that 52 -- for his definitely, yes.

MR. FREEZE: Thank you, Judge.

THE COURT: Anything else on behalf of the government?

MS. SCHNEIDER:  I don't believe so, Your Honor.

THE COURT:  On behalf of the defense?

MR. GLASGOW:  Your Honor, we had a couple, if we could, briefly.  And I don't know to the extent that the Court has, but I do know Mr. Watts can at least make a suggestion in terms of recommendations for facilities that he would be serving his time at as well as an amount of time in which to get his affairs in order and turn himself in.

With that in mind, Mr. Watts had spoken to me before coming in today.  He has family both in the western part of the United States and also in Wisconsin.  And with that in mind, he -- and I don't know if it's a suggestion, request, however you'd want to phrase it, there is a federal correctional facility in the State of Colorado.  I don't think it's to hang out with our former governor, but it is the one that Governor Blagojevich was sentenced to, which is Mr. Watts looked at map in terms of closeness to his family.  That would be one that he would ask the Court to consider if the Court has the ability to do that.

THE COURT:  Yes, the Court only -- the Court can only make a recommendation.

MR. GLASGOW:  Yes, I understand, Judge.  With that in mind --

THE COURT:  So if you have a specific one, just let us know, and the Court can --

MR. GLASGOW:  It's that one.  There is one in the State of Arizona.  I did not -- I don't know specifically the name of that one.  And one I think is in Sandstone, Minnesota, which is the southern part I believe of the State of Minnesota.  So he would ask that -- request at least those be considered.  He would also ask if Your Honor could give him between 30 and 60 days to get his affairs in order, sell property, be prepared to turn himself in.  His family can take care of the rest of the matters after that.

THE COURT:  Government position on his request for 30 to 60 days.

MS. SCHNEIDER:  We don't have any objection to that, Your Honor.

THE COURT:  All right.  Sir, I'll give you 60 days.  All right.  Till after -- make it January -- after the first of the year.

THE CLERK:  January 10th.

THE COURT:  You will turn yourself in to the marshal's office.

THE CLERK:  They will designate him by then.

THE COURT:  You'll be designated by then as to where you're supposed to be.

MR. FREEZE:  Judge, I do have one question.  Maybe I just didn't hear you.  Did you impose the condition of supervised release that would require the defendant to provide

the Probation Office with financial records --

THE COURT:  With a DNA sample?

MR. FREEZE:  Access to financial information, financial records.

THE COURT:  You know what, I didn't say that specifically, but that will -- that is part of the order, that Probation have access to his financial information.

MR. FREEZE:  Thank you, Judge.  And I just would remind the defendant -- the Probation Office would remind the defendant that the bond conditions still hold and any pretrial requirements need to be followed.

THE COURT:  And the Court will remind him of that also.  Before we do that, is there anything else from the government?

MS. SCHNEIDER:  Yes, Your Honor.  I neglected to move to dismiss the forfeiture allegation in the indictment.

THE COURT:  I'm certain that there's no objection.

MR. GLASGOW:  No objection.

THE COURT:  It will be granted.  All right.  Anything else from the government?

MS. SCHNEIDER:  No, Your Honor.

THE COURT:  Defense, anything else?

MR. GLASGOW:  No.  Thank you.

THE COURT:  Was there a waiver of appeal rights here? Sir, you have the opportunity to appeal this Court's decision.

You have to do so within -- let the proper authorities know you want to do so within 14 days.  You speak to your counsel, and they will assist you with that.

Sir, again this is not a happy day for the Court. Clearly not for you and your family.  The Court is certain that you understand that not only do the conditions remain while you are out, but you will clearly not help yourself if for some reason any of these conditions are violated regardless of whatever stress and strain there may be as it leads up to the date.  All right.  And the Court wishes that after your completion of this sentence that things will go well for you.

All right.  Thank you very much.

MS. SCHNEIDER:  Thank you, Your Honor.

MR. GLASGOW:  Thank you, Your Honor.

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.


*/s/TRACEY D. McCULLOUGH*                         *September 4, 2014*

Official Court Reporter                         Date
United States District Court
Northern District of Illinois
Eastern Division